UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:  Case No. 8:12-bk-03870-MGW
Chapter 13

Timothy D. Plummer,

    Debtor.

_____/

**MEMORANDUM OPINION**

    Under 11 U.S.C. § 1322(b)(2), a chapter 13 debtor's plan may modify the rights of a holder of a secured claim other than a claim secured by a lien on the debtor's principal residence. In this case, a condominium association holds a lien for unpaid assessments that is secured by the debtor's principal residence. However, because the amount of the first mortgage exceeds the value of the property, under bankruptcy law, the condominium association's lien is unsecured. And while Florida statutes section 718.116 does give the condominium association certain rights against the bank holding the first mortgage, those rights do not include subordination of the bank's lien on the residence. Accordingly, the Court will grant the debtor's Motion to Determine Secured Status of Timber Lake Estates, Inc. (the "Motion").[1]

*Factual Background*

    The Debtor is the owner of a condominium that is his primary residence. The Debtor's ownership interest in the condominium is subject to a declaration of condominium ("Declaration of Condominium") recorded years prior to the Debtor's purchase of the condominium and execution of a purchase money mortgage in favor of San Antonio Citizens Federal Credit Union ("Credit Union") in 2005. The Declaration of Condominium gives the condominium association,

---

[1] Doc. No. 26.

Timber Lakes Estates, Inc., ("Association") the right to assess each condominium parcel owner for common expenses.

Under the Declaration of Condominium, the assessments are secured by a lien against the condominium parcels. However, under the terms of the Declaration of Condominium, the lien does not arise in favor of the Association until the recording of a claim of lien with respect to the specific past-due amounts. In this case, the Association recorded a claim of lien in 2011, well after the recording of the mortgage held by the Credit Union.

The Declaration of Condominium also provides that the Association's assessment liens are subordinate to any recorded institutional first mortgage regardless of when the assessment was made. And if a first mortgagee obtains title as a result of the foreclosure of the mortgage, any person acquiring title by virtue of the foreclosure is not liable for the past-due assessments.

Prior to the Debtor's filing this chapter 13 case, he fell behind on payment of assessments due to the Association. Accordingly, the Association filed a claim of lien and then brought a foreclosure action against the Debtor and "any unknown occupants in possession." The Credit Union was not a party to the foreclosure action. A final judgment of foreclosure was obtained by the Association on February 16, 2012, with respect to unpaid assessments owing through February 14, 2012. The Debtor filed his bankruptcy petition on March 6, 2012, prior to the date of the foreclosure sale of March 20, 2012.

For purposes of this Motion, the parties have stipulated that the Credit Union is owed $46,990.60 as of the date of the petition with respect to its purchase money mortgage and that the value of the condominium is $41,296.

*Issue*

The issue before the court is whether or not a condominium assessment lien encumbering a debtor's principal residence can be stripped off in a chapter 13 case where the amount of the first mortgage exceeds the value of the condominium.

*Conclusions of Law*[2]

In considering the issue before the Court, the Court will first review the nature of an assessment lien under Florida case law and statutory law generally dealing with the relative priorities of association liens and mortgages that are recorded after the original recording of the declaration of covenants. The Court will then review the state of the law concerning the right of a debtor in a chapter 13 case to strip off liens encumbering the principal residence where the liens are subordinate to a prior mortgage. The Court will then apply these legal principles to the facts of this case and conclude that the Debtor is entitled to strip off the assessment lien in this case.

    A.  Florida Case Law As Modified by Florida Statute 718.116.

The historical Florida case law dealing with assessment liens is now subject to section 718.116 of the Florida Statutes. However, it is important to review the common law principles because it is well settled that "the presumption is that no change in the common law is intended unless the statute explicitly so states."[3] Under Florida case law, liens on real property can be created only by contract or by operation of law.[4] These requirements are satisfied when a person accepts a deed of an interest in real property with actual or constructive notice of the lien provisions of a declaration of covenants. Acceptance of the deed manifests "the intent to let the

---

[2] The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

[3] *See Humana Health Plans v. Lawton*, 675 So. 2d 1382 (Fla. 5th DCA 1996) (citing *Bd. of Trustees of the Internal Improvement Trust Fund v. Sand Key Associates, Ltd.*, 512 So. 2d 934 (Fla. 1977)).

[4] *Bessemer v. Gersten*, 381 So. 2d 1334, 1347 (Fla. 1980).

3

real property stand as security for the obligation."[5] That is, acceptance of the deed with actual or constructive notice of the provisions of the declaration of covenants creates a "valid contractual lien" in favor of the association.[6] And under this case law, creation of the lien by acceptance of the deed relates back to the time of the filing of the declaration of covenants.[7]

These principles apply equally to the owner and to a subsequent mortgage holder.[8] And in terms of relative priorities between an association and the mortgage holder, the general rule governing priority of the liens is "first in time is first in right."[9] But the prior filing of the declaration of covenants does not in itself give priority to an association over a subsequently recorded mortgage for later unpaid assessments. It depends on the language contained in the declaration of covenants.

On this question, the Florida Supreme Court has held that "in order for a claim of lien recorded pursuant to a declaration of covenants to have priority over an intervening recorded mortgage, the declaration must contain specific language indicating that the lien relates back to the date of the filing of the declaration or that it otherwise takes priority over intervening mortgages."[10] Thus, in the Florida Supreme Court case of *Holly Lake*,[11] because the declaration of covenants failed to put the bank on notice that the association claimed a continuing lien on the property securing monthly maintenance assessments, the bank could not be charged with

---

[5] *Id.* at 1348.

[6] *Id.*

[7] *Id.*

[8] *Holly Lake Ass'n v. Fed. Nat'l Mortgage Ass'n*, 660 So. 266, 267 (Fla. 1995).

[9] *Id.* at 268.

[10] *Id.* at 269.

[11] *Id.*

constructive notice of the existence of the association's lien, and its mortgage was superior to that of the association's lien.

Applying the same principles, the court in *Avatar Properties*[12] held that the lien for assessments had priority over the mortgage because the declaration of covenants specifically stated that the lien for assessments would be superior to any subsequently recorded mortgage. Given this explicit language, the court concluded that it was "fair to assert the 'first in time, first in right' rule against [the mortgage holder], based on the Declaration which was recorded."[13]

To some extent, these principles were modified by the Legislature in 1990 and subsequent amendments by the enactment of section 718.116 dealing with assessments generally and the respective liens and priorities to which they may be accorded. This section deals with liability for assessments in subsection (1) and an association's right to a lien for those assessments in subsection (5).

Under subsection (5), an association has a lien on each condominium parcel to secure the payment of assessments.[14] The lien is generally effective from and relates back to the recording of the original declaration of condominium.[15] However, with respect to the first mortgage holder, the lien is effective "from and after recording of a claim of lien…."[16] In this case, the Association filed its claim of lien in 2011. The mortgage was recorded in 2005. Accordingly, the Association's lien rights would be subordinate to that of the first mortgage holder.

---

[12] 724 So. 2d 585 (Fla. 5th DCA 1998).

[13] *Id.* at 587.

[14] Fla. Stat. § 718.116(5)(a).

[15] *Id.*

[16] *Id.*

Under subsection (1), a unit owner acquiring title by purchase at a foreclosure sale is liable for all unpaid assessments that came due before the time of transfer of title.[17] However, in the case of a first mortgagee who acquires title to a unit by foreclosure, the liability for prior unpaid assessments is limited to the *lesser of* unpaid assessments that accrued in the 12 months immediately preceding acquisition of title, *or* 1% of the original mortgage debt.[18]

This review of the Florida case law and statutory law dealing with the relative priorities of associations and mortgage holders can be summarized as follows. First, under the applicable case law, the "first in time, first in right" common-law rule applies. If a declaration of covenants specifically puts the later mortgage holder on notice that the mortgage will be subject to its lien rights, then the association will prevail. If the declaration does not provide such notice, the mortgage holder will prevail.

Second, under a statutory modification to this case law, the holder of a first mortgage is given certain protections. In this respect, even if the declaration of covenants contained explicit language to the effect that the assessment liens were superior to any mortgage recorded after the recording of the declaration of covenants, the first mortgage holder's lien would still be superior to the association lien unless the first mortgage was recorded after the recording of a claim of lien.[19]

The other key modification to this case law is the imposition of direct liability of the first mortgagee who acquires title to a unit by foreclosure for unpaid assessments that became due before the mortgagee's acquisition of title. However this direct liability is limited to the lesser of 12 months of assessments or 1% of the original mortgage debt. By its terms, this latter provision

---

[17] Fla. Stat. § 718.116 (1) (a).

[18] Fla. Stat. § 718.116(1)(b)(1).

[19] Fla. Stat. § 718.116 (5)(a).

6

only creates a liability -- it does not subordinate the mortgage holder's lien to the assessment lien. As will be discussed, this is important because the right of a chapter 13 debtor to strip off a lien on a principal residence is dependent upon the lack of any secured status for the claim secured by the lien.

We next consider the rights and limitations placed upon a debtor seeking to strip off liens in a chapter 13 case.

### B. The Debtors Rights under § 1322, *Nobleman* and *Tanner*.

The Bankruptcy Code gives the debtor to right to modify the rights of holders of secured claims.[20] However, a key limitation to a debtor's rights in a chapter 13 plan with respect to modifying the rights of holders of secured claims is that a chapter 13 plan may not modify the "rights of holders of secured claims ... secured only by a security interest in ... the debtor's principal residence."[21]

In this respect, the United States Supreme Court in *Nobelman* made clear that § 1322(b)(2) cannot be used to modify the rights of a holder of secured claim where any portion of the claim is secured by the debtor's principal residence. Even one dollar of collateral value in excess of the superior mortgage debt brings into play the anti-modification provision prohibiting a debtor from modifying a claim secured by the debtor's principal residence.[22] But the Eleventh Circuit in *Tanner*[23] concluded that *Nobelman's* holding does not extend to wholly unsecured

---

[20] 11 U.S.C. § 1322(b)(2).

[21] *Id.*

[22] *In re Scantling*, 465 B.R. 671, 677 (citing *Nobelman v. Am. Sav. Credit Union*, 508 U.S. 324, 329–30 (1993)).

[23] *Tanner v. FirstPlus Fin., Inc.* (*In re Tanner*), 217 F.3d 1357, 1358 (11th Cir. 2000).

7

homestead mortgages. Accordingly, section 1322(b)(2) allows a debtor to strip off a wholly unsecured lien on the debtor's principal residence.[24]

Applying this statutory analysis to the facts of this case, the Court concludes as follows. As discussed above, in the first instance, the Association's lien rights derive from Florida case law and section 718.116, Florida Statutes. Retaining these rights, however, is dependent upon the Court's determination in this bankruptcy case that the Association has a secured claim.

This is dependent on a finding that some portion of the assessment lien is superior to the lien of the Credit Union. As discussed, under *Nobleman*, if any portion of the Association's assessment lien is superior to the Credit Union's mortgage, then none of it can be stripped off. However, if the Association's lien is totally subordinate to the Credit Union's mortgage, then it can be stripped off.

Here it is clear that the Association's lien is totally subordinate to the Credit Union's mortgage for two reasons. First, viewed from the perspective of the terms of the original declaration of covenants and the common law discussed above, it is clear that the Credit Union's first mortgage is not subordinate to the Association's lien for unpaid fees by virtue of the language contained in the Declaration of Condominium.[25] This language specifically subordinates the assessment lien to a first mortgagee. Second, section 718.116 (5)(a) specifically provides the holder of a first mortgage with priority over a lien for assessments unless the mortgage is recorded after the recording of the claim of lien. Here the mortgage was recorded years before the filing of a claim of lien.

The only plausible argument that the Association has to any priority with respect to its lien rights is found under section 718.116(1). Indeed, this provision does impose liability on the

---

[24] *Id.* at 1359-60.

[25] Creditor's Proof of Claim No. 3, part 2.

holder of the first mortgage who acquires title to a unit by foreclosure for the lesser of 12 months of assessment fees or 1% of the original mortgage debt. However, this provision does not give the Association any lien rights. It merely gives it the right to assert liability for past-due assessments against the mortgage holder if the mortgage holder acquires title through foreclosure. In this case the mortgage holder has not acquired title through foreclosure. So there is no viable argument that the Association has a lien against the mortgage holder.[26]

      C.  Association's Arguments.

The Association's primary argument in response to the Motion is that condominium association assessments are not secured by the value of the property, but are secured by operation of law under a state statute and are based on a covenant running with the land that cannot be avoided or stripped from the condominium.[27] As part of this argument, the Association expresses the view that lien priority of condominium assessments are matters not contemplated by the Bankruptcy Code but governed by Florida law. The Association also argues that foreclosure of a first mortgage does not operate to extinguish an association's lien.

Simply stated, the primary argument advanced by the Association is that unlike other liens regularly dealt with by the bankruptcy courts, condominium assessment liens enjoy a special status and are not subject to the Bankruptcy Code. Not surprisingly, the Association has not cited, nor can the Court find, any case law supporting the proposition that a condominium assessment lien enjoys a special status under the Bankruptcy Code.[28]

---

[26] A lien against the first mortgage holder would only arise if the mortgage holder had received title to the property at its foreclosure sale and had not paid the statutorily due amount to the association within 30 days after transfer of title. *See* Fla. Stat. § 718.116(c).

[27] Doc. No. 29, at ¶ 10.

[28] In fact, the case law that exists holds to the contrary. *See, e.g., In re Gonzales*, 2010 WL 1571172, at *2 (Bankr. S.D. Fla. 2010); *In re Bartee*, 212 F.3d 277, 288-89 (allowing debtor to strip off homeowner's association lien imposed by Texas statute); *In re Cook*, 2010 WL 4687953, at *2 (Bankr. E.D. Va. 2010) (applying Virginia law).

While it is true that condominium association liens are not separately dealt with under the Bankruptcy Code, this is because the Bankruptcy Code defines liens in a broad sense. Specifically, under Bankruptcy Code § 101(37), the term "lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation.[29] The Bankruptcy Code then goes on to define types of liens that commonly exist. These include a "judicial lien," meaning a lien obtained by judgment,[30] a "security interest," meaning a lien created by an agreement,[31] and a "statutory lien," meaning a lien arising solely by force of a statute."[32] Arguably, an assessment lien could fall under the definition of a security agreement based on the Florida case law discussed above that stands for the proposition that when one accepts a deed of an interest in property with constructive notice of lien provisions contained in a declaration of covenants, the acceptance of the deed manifests the intent to let the property stand as security for the obligation. Alternatively, condominium assessment liens are statutory liens arising under section 718.116, Florida Statutes.

But no matter the specific definitional category in which condominium assessment liens fall, there is no question but that an assessment lien is a charge against the condominium owner's property to secure performance of the owner's obligation to pay assessments.  As such, condominium assessment liens squarely fall within the Bankruptcy Code's definition of liens and are subject to the application of Bankruptcy Code section 506. To hold otherwise would be to give condominium associations a special status under the bankruptcy laws that is not set forth in the Bankruptcy Code.

---

[29] 11 U.S.C. § 101 (37).

[30] 11 U.S.C. § 101 (36).

[31] 11 U.S.C. § 101 (51).

[32] 11 U.S.C. § 101 (53).

In this respect, Congress certainly knows how to insulate types of creditors or types of relationships from the general application of bankruptcy law. For example, special rights are given to landlords under § 365 and utilities under § 366. Various classes of creditors are entitled to priority under § 507, the primary one being the first priority given to holders of claims for domestic support obligations. Another group of favored creditors are governmental units for taxes.[33] And there are 19 categories of debts that are not subject to discharge in bankruptcy.[34] In fact, condominium assessment fees are included in this latter category limited, however, to assessments that become due and payable after the bankruptcy filing.[35]

The Association also argues that foreclosure of a first mortgage does not operate to extinguish a condominium association's lien. No citation of authority is given for this proposition. And this contention is not supported by the language of section 718.116 (5)(a) that makes condominium assessment liens subordinate to first mortgages of record, except in the limited instances where a claim of lien was filed prior to the mortgage being recorded. Clearly, in a mortgage foreclosure action, the court could enter a final foreclosure judgment dealing with these relative priorities. Of course, the condominium association would still have the right to counterclaim stating a cause of action against the mortgage holder based upon the liability established under section 718.116(1)(b) for certain assessments.

As a practical matter, the foreclosure court, as a court of equity, would enter judgment in favor of the Association for the limited assessments for which the mortgage holder would be liable and order these paid prior to any distribution to the mortgage holder. However, the right to be paid these assessments derives from a statutory liability under subsection (1) of 718.116, not

---

[33] 11 U.S.C. § 507(a)(8).

[34] 11 U.S.C. § 523(a)(1)-(19).

[35] 11 U.S.C. § 523(a)(16).

by virtue of superior lien rights—those having been subordinated to the rights of the first mortgage holder under subsection (5).

### D.  Limitation on the Court's Ruling.

The Court's ruling only affects the Association's lien rights with respect to the Debtor's condominium. For purposes of this bankruptcy, assuming the Debtor successfully completes his plan payments to include cure and reinstatement of the Credit Union's first mortgage, the Association's lien will be stripped off.  However, consistent with Judge Cristol's well-reasoned opinion in *Gonzales*,[36] nothing in this opinion or in the order stripping the Association's lien will affect the right of the Association to be paid the amounts provided for under section 718.116(1)(a) from the Credit Union if, in the future, the Credit Union acquires title to the property through foreclosure.

*Conclusion*

Based on the foregoing, the court concludes that a condominium association lien encumbering the debtor's principal residence can be stripped off in a chapter 13 case where the amount of the first mortgage exceeds the value of the condominium.  Of course, the power to strip off liens is limited to liens existing on the date of the petition.  It does nothing to insulate a debtor who is a unit owner for liability for assessments that come due after the date of the petition that would otherwise be owed under Florida Statute 718.116 (1) (a).[37]

---

[36] 2010 WL 1571172, at *2 (Bankr. S.D. Fla. 2010).

[37] 11 U.S.C. § 523(a)(16).

The Court will enter a separate order granting the Motion consistent with the terms of this Memorandum Opinion.

**DATED** in Chambers at Tampa, Florida, on January 14, 2013 _____.

_____
Michael G. Williamson
United States Bankruptcy Judge

**Robert C. Burnette, Esq.**
*Counsel for Debtor*

**Stephan C. Nikoloff, Esq.**
*Counsel for Timber Lake Estates, Inc.*

Copies to be provided by CM/ECF service.